# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO F.V., | Case No. 1:25-cv-01432-KES-SKO |
| Petitioner-Plaintiff, | **FINDINGS AND RECOMMENDATION TO GRANT IN PART PETITIONER-PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | (Doc. 7) |
| CHRISTOPHER CHESTNUT, *in official capacity as Warden of California City Detention Facility*, et al., | SEVEN-DAY DEADLINE |
| Respondents-Defendants. | |

Petitioner Julio F.V. is an immigration detainee proceeding with a petition for writ of habeas corpus. (Doc. 1). Pending before the Court is Petitioner's motion for a preliminary injunction filed on October 28, 2025. (Doc. 7). On November 14, 2025, the District Court issued an order setting a briefing schedule. (Doc. 10). On November 24, 2025, Respondents filed an opposition to the motion for a preliminary injunction. (Doc. 7). On January 28, 2026, Petitioner filed a reply. (Doc. 14).

On December 20, 2025, the District Court referred the matter to the undersigned for preparation of findings and recommendations on the merits of the motion. (Doc. 15).

On January 16, 2026, the undersigned issued an order requiring supplemental briefing from Petitioner and inviting a response from Respondents. (Doc. 16). Petitioner filed their

supplemental brief on January 23, 2026, (Doc. 17), and Respondents filed a response on February 3, 2026, (Doc. 22).

## I.    BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without inspection on or about 2001. (Doc. 1-1 at 14, 20).  He was detained by the Department of Homeland Security (DHS) on September 5, 2023.  (Doc. 1 ¶ 29).

Petitioner alleges his detention has been prolonged and that there were defects in the Immigration Judge ("IJ")'s and Board of Immigration Appeals ("BIA") handling of Petitioner's "*Aleman*[1]" hearing on December 30, 2024, at which the agency considered and denied Petitioner's request for bond. (Doc 1-1 at 358–78; 389–96).  Petitioner appealed to the BIA, which dismissed the appeal as moot on June 4, 2025, stating "the applicant's withholding only proceedings have been completed, and his bond appeal is moot."  (Doc. 1-1 at 464).  The BIA then denied Petitioner's motion for reconsideration on October 28, 2025, (Doc. 7-1 at 6), which highlighted Petitioner's rights under the *Aleman* injunction that, at the time, remained in effect, (Doc. 1-1 at 467).

Petitioner now brings claims alleging (1) violations of the Procedural Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act, (2) violations of the Administrative Procedures Act, and (3) violations of substantive due process under the Fifth Amendment.  (Doc. 1 ¶ 139–50).  Petitioner also moved for preliminary injunctive relief "enjoining DHS from continuing to detain him pending further order, or alternatively, unless and until they can prove to a neutral adjudicator—this Court—that clear and convincing evidence justifies his continued detention."  (Doc. 7 at 31).

---

[1] On June 5, 2018, the Northern District of California certified a class of those detained pursuant to section 1231(a)(6) detained in the Ninth Circuit and issued a preliminary injunction under the Immigration and Nationality Act and the Administrative Procedures Act enjoining the government "from detaining Plaintiffs and the class members pursuant to section 1231(a)(6) for more than 180 days without providing each a bond hearing before an IJ." *Aleman Gonzalez v. Sessions*, 325 F.R.D. 616 (N.D. Cal. June 5, 2018).  The *Aleman* Court reached only the class's statutory claims, avoiding ruling on their constitutional claims.  *Id.* at 622.  The case was ultimately reversed and remanded to the Ninth Circuit by the Supreme Court.  *See Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).  The Ninth Circuit further remanded the case back to the District Court.  *Aleman Gonzalez v. Barr*, No. 18-16465, 2023 WL 3158294, at *1 (9th Cir. Apr. 25, 2023).

On May 23, 2025, Petitioner filed a timely Petition for Review ("PFR") before the Ninth Circuit seeking review of the BIA's denial of Petitioner's motion to reopen. (Doc. 1-1 at 7). That PFR is calendared for oral argument in April 2026. (*Id.*).

On February 3, 2026, during the pendency of this motion, the Northern District of California vacated the preliminary injunction that was the basis for Petitioner's *Aleman* hearing before the IJ. *Aleman Gonzalez v. Bondi*, 3:18-cv-01869 (N.D. Cal. Feb. 3, 2026).

## II.   LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Id.* at 20. A plaintiff seeking a preliminary injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The Court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a preliminary injunction. *See Earth Island Inst. v. Nash,* No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020)

("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction).

Petitioner contends he is entitled to injunctive relief because his removal under § 1231(a)(6) is not reasonably foreseeable, and his continued, indefinite detention violates the Fifth Amendment's Due Process Clause. (Doc. 1 ¶¶ 139–43; Doc. 7 at 7). As explained below, the undersigned finds that the *Winter* factors weigh in favor of Petitioner regarding his claim under section 1231(a)(6), as interpreted in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and therefore recommends that the Application be granted in part.

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Starting with the first *Winter* factor, the likelihood of success on the merits, the Court begins by considering the legal background governing Petitioner's claims.

The detention of noncitizens[2] who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [DHS] determines 'to be a risk to the community'; and (4) those [DHS] determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

The record shows that Petitioner was ordered removed pursuant to a Final Administrative Removal Order on September 5, 2023. (Doc. 12-2 at 13). Therefore, at that point, Petitioner was subject to mandatory detention for a period of 90 days. 8 U.S.C. § 1231(a)(1)(B)(i), (2)(A). After

---

[2] Following the lead of the United States Supreme Court, we "use[ ] the term 'noncitizen' throughout this opinion to refer to any person who is not a citizen or national of the United States." *Pereira v. Sessions*, 585 US. 198, 201 n.1 (2018).

the expiration of the 90-day period, on or about December 4, 2023, the authority for Petitioner's detention shifted to § 1231(a)(6) by virtue of him being a noncitizen ordered removed who is inadmissible under INA section 212.  8 U.S.C. § 1231(a)(6); § 1182(a)(9)(C)(i)(I).  Although Petitioner is seeking relief through withholding-only proceedings, (*see* Doc. 1-1 at 107–45), his "removal order remains administratively final, [and] he continues to be detained pursuant to § 1231(a)." *Padilla-Ramirez*, 882 F.3d at 832.

The Supreme Court examined the constitutional limits of discretionary detention under section 1231(a)(6) in *Zadvydas*, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s]." 533 U.S. at 692. *Zadvydas* read an implicit due process limitation into section 1231(a)(6) in order to avoid serious constitutional problems.  The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.  As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

To establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Supreme Court recognized a presumptively reasonable six-month period of detention. *Id.* at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  While it is difficult to ascertain an endpoint to removal proceedings in the present case, it is clear proceedings could take a substantial amount of time.  It is unknown when the Ninth Circuit will decide the pending PFR or the length of time of any procedures necessary if Petitioner prevails.  Compared to the six-month presumptive period set forth in *Zadvydas* beyond which continued detention becomes prolonged, Petitioner's period of detention qualifies as substantially prolonged. *Zadvydas*, 533 U.S. at 701.  In light of this prolonged detention, the undersigned finds it proper to consider whether Petitioner is likely to succeed on his procedural due process claim.

The Ninth Circuit has noted the common use of the *Mathews* test and assumed (without deciding) that it applies to due process claims in the immigration detention context. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the undersigned will apply the *Mathews* test.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, the undersigned evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. As an initial matter, Petitioner has been detained approximately 29 months. Compared to the six-month presumptive period set forth in *Zadvydas* beyond which continued detention becomes prolonged, Petitioner's 29-month detention qualifies as prolonged. *Zadvydas*, 533 U.S. at 701. The Ninth Circuit has also held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).

However, in *Rodriguez Diaz v. Garland*, the Ninth Circuit also stated that "in evaluating the first prong of the *Mathews* analysis, courts may not simply count the months of a Petitioner's detention. Instead, a court must also consider the process Petitioner received during the time he has been detained, any further process that was available to him, and whether his detention was prolonged due to his decision to challenge his removal order. *Rodriguez Diaz*, 53 F.4th at 1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id.* at 1213.

In *Rodriguez Diaz*, the petitioner received a bond hearing after he was detained. *Id.* at 1207. Here, like the petitioner in *Rodriguez Diaz*, Petitioner received the benefit of an

individualized bond hearing in the form of an *Aleman* hearing.  (Docs. 1-1 at 359–87; 12-1 at 4).  However, unlike the petitioner in *Rodriguez Diaz* who was detained pursuant to section 1226(a), Petitioner's entitlement to a hearing in the present case was predicated on an injunction that has since been vacated during the pendency of these proceedings.  And this development complicates (1) Petitioner's path to seek review, not only of the BIA's decision to dismiss the appeal as moot—which Petitioner claims constitutes legal error since the BIA's dismissal predated the vacatur of the injunction—but also (2) the underlying Immigration Judge's decision, which Petitioner claims is not constitutionally adequate.  The undersigned finds that this procedural posture uniquely entangles the first prong of the *Mathews* test with the second prong: "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335.

The Court finds that this second factor weighs in favor of Petitioner.  Unlike, for example, the petitioner in *Rodriguez Diaz* who was detained pursuant to section 1226(a), Petitioner did not have an opportunity for meaningful review by the BIA or the opportunity to "seek further bond redeterminations" in light of the vacated injunction.  (*See* Doc. 1-1 at 464).  In conducting the *Mathews* test in *Rodriguez Diaz*, the Ninth Circuit reasoned that "[i]n short, the agency's decision to detain Rodriguez Diaz was subject to numerous levels of review, each offering Rodriguez Diaz the opportunity to be heard by a neutral decision maker," which "ensured that the risk of erroneous deprivation would be 'relatively small.'"  *Rodriguez Diaz*, 53 F.4th at 1210.  The *Rodriguez-Diaz* Court also found relevant that the BIA's decision "would be subject to review in habeas," *id.*; *see also Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).  But the reasoning of *Rodriguez-Diaz* does not apply here.  While Petitioner did receive a bond hearing, there was no meaningful review of the merits of the IJ's decision from the BIA.  And importantly, the undersigned finds the Court's ability to review the BIA's decision in the present case is also limited because, while the undersigned finds that the BIA's decision to dismiss Petitioner's bond appeal as moot was legal error *at the time* the BIA dismissed the appeal, remand would likely be futile due to the subsequent the vacatur of the *Aleman* injunction.

Further, the process due under a bond hearing ordered pursuant to the Due Process Clause, does not provide the IJ "'extremely broad discretion' in deciding whether to release a [noncitizen] on bond," as claimed by the IJ in their bond decision in the present case. (Doc. 1-1 at 391 (quoting *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006))).  As this Court has previously held, while such discretion may exist within a generic bond proceeding provided pursuant to a statutory claim—like Petitioner's *Aleman* hearing—such discretion is not available in a constitutionally mandated proceeding based on the Due Process Clause involving a heightened burden on DHS. *See Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *9 (E.D. Cal. Oct. 22, 2025).

Thus, the probable value of additional procedural safeguards, *i.e.*, a bond hearing ordered pursuant to the Due Process Clause, is high, because Respondents have not provided the usual procedural safeguards provided to a noncitizen who has been detained for a prolonged period of time.  *See Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *9 (E.D. Cal. Oct. 22, 2025); *cf. Salazar-Garza v. Semaia*, No. 2:25-CV-05324 SB (RAO), 2025 WL 3165160, at *6 (C.D. Cal. Oct. 3, 2025), *report and recommendation adopted*, No. 2:25-CV-05324-SB-RAO, 2025 WL 3162330 (C.D. Cal. Nov. 12, 2025) (finding no risk of erroneous deprivation where "Petitioner's detention was subject to numerous levels of review, and at each level of review, Petitioner had the opportunity to be heard by a neutral decisionmaker."); *Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *7 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, No. C24-1933-JNW-MLP, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025), *and objections overruled*, No. 2:24-CV-01933-JNW, 2025 WL 2481251 (W.D. Wash. Aug. 28, 2025)  (finding that there was no risk of erroneous deprivation where Petitioner received "two bond hearings" and "multiple custody reviews," that "Petitioner could, and did, appeal" and where "[a]t each level of review, Petitioner had the opportunity to be heard by a neutral decisionmaker");

Given that Petitioner has been held for almost over two-and-a-half years with only a *Aleman* hearing (1) under which the agency applied a different standard than the standard applicable to a hearing ordered pursuant to the Due Process Clause, (2) for which there is now no

longer a legal basis, and (3) pursuant to which there is no clear opportunity for the kind of review the Ninth Circuit has found material to constitutionally adequate process to avoid erroneous deprivation—the risk of erroneous deprivation weighs in favor of granting a bond hearing pursuant to the Due Process Clause.

Turning back to the first factor, the undersigned finally considers whether the reason for the lengthy period of detention is due to Petitioner's own actions. *Rodriguez Diaz*, 53 F.4th at 1208; *Demore*, 538 U.S. at 530-31. Arguably, some of the detention period was due to Petitioner seeking various remedies resulting in proceedings before the IJ, the BIA, the Ninth Circuit. But Petitioner's actions were "legitimate collateral challenges to his removal order," in which Petitioner has made "use of the statutorily permitted appeals process, "which only "minimally" diminishes his liberty interest. *Ortiz-Castillo v. United States*, No. 223CV01485RFBMDC, 2024 WL 756075, at *3 (D. Nev. Feb. 23, 2024). Considering the length of Petitioner's detention, the process received and available to him during that time, the further process available to him, and the reasons for the length of his detention, the undersigned finds that the first factor also weighs in Petitioner's favor.

In the third factor, the undersigned weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. *Demore*, 538 U.S. at 531. In addition, the government has a strong interest in protecting the public from the risk of danger posed by releasing an individual who is a was at one point a self-admitted gangmember with a criminal history. *See Y. M.*, 2025 WL 3228125, at *6; (AR 42; 44).

As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases). The government's asserted interest is hinged on mere speculation about the outcome of a bond proceeding under a different standard and a determination on the merits of any BIA review. Providing a constitutionally adequate bond hearing would not undercut the

government's asserted interests in effecting removal or protecting the public. Given "the minimal cost" of engaging in a constitutionally adequate bond hearing, courts have concluded that "the government's interest is not as weighty as Petitioner's." *Zagal-Alcaraz*, 2020 WL 1862254, *7 (quoting *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The undersigned agrees with this analysis. Although the government has a strong interest, it is outweighed by that of Petitioner.

In sum, the undersigned finds that Petitioner is likely to prevail on his claim that his prolonged detention without a bond hearing reviewable by the BIA violates his Fifth Amendment due process rights.

**B.    Irreparable Harm**

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 2004)). Given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that his detention without a constitutionally-adequate bond hearing violates the Due Process Clause, Petitioner faces irreparable harm absent a preliminary injunction.

**C.    Balance of Equities and Public Interest**

When the Government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the Government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the Government can detain Petitioner at all, but whether it can detain Petitioner for a prolonged period without a constitutionally adequate bond hearing. Faced with a choice "between [minimally costly procedures] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in Petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

**D.     Remedy**

In conclusion, the undersigned finds that the requirements for issuing a preliminary injunction are met. The undersigned, therefore, must next consider the appropriate remedy.

Petitioner contends that he cannot receive a constitutionally adequate bond hearing before a neutral decisionmaker at a hearing conducted by the agency. The undersigned does not agree. After reviewing the record, the undersigned concludes that Petitioner is not likely to prevail in carrying the high burden of showing "that the IJ had a deep-seated favoritism or antagonism that would make fair judgment impossible." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007); *see also Mata-Yanez v. Bondi*, No. 23-1329, 2025 WL 3014219, at *1 (9th Cir. Oct. 28, 2025)

Because the undersigned finds Petitioner not likely to prevail on his claim of agency bias for the purposes of the pending motion, the undersigned recommends remanding the matter to the agency for a constitutionally-adequate bond hearing. *Accord I.E.S. v. Becerra*, No. 23-CV-03783-BLF, 2023 WL 6317617, at *9 (N.D. Cal. Sept. 27, 2023) ("Even if [Petitioner] is correct that the Court has the authority to hold a bond hearing, the more prudent course is to allow an IJ to make determinations about [Petitioner]'s risk of flight or danger to the community and eligibility for ISAP."); *Mansoor v. Figueroa*, No. 317CV01695GPCNLS, 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP."); *Grewal v. Becerra*, No. 23-CV-03621-JCS, 2023 WL 6519272, at *9 (N.D. Cal. Oct. 4, 2023).

**E.    Bond**

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  However, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation modified) (*quoting Jorgensen v. Cassiday*, 320 F.3d 909, 919 (9th Cir. 2003)).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen*, 320 F.3d at 919 (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

Neither party has addressed the issue of security in this case and the court finds no security required here as courts regularly waive security in such cases.  *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-6254 KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025) (collecting cases).

## IV.    CONCLUSION

Accordingly, the undersigned hereby RECOMENDS:

1.     Petitioner's Motion for Preliminary Injunction, (Doc. 7), be GRANTED IN PART;

2.     Respondent be DIRECTED to provide Petitioner with a bond hearing before an IJ within fourteen (14) days in which the government must demonstrate by clear and convincing evidence that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision; and

3.     The parties be DIRECTED to file a status report within seven (7) days after relief as ordered is granted, or the expiration of the fourteen (14) day period in paragraph 2, whichever occurs first.

These Findings and Recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within seven (7) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id.* The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **February 11, 2026**        /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE

13